DOUCET, Judge.'
In this workmen’s compensation suit, the trial court found that the plaintiff, Lucille Aymond, was entitled to temporary total disability benefits at the rate of $89.32 per week for a period of 25.8 weeks or six months from the date of injury, September 9, 1982. In addition, the employer’s insurer was held subject to statutory penalties of 12% interest and attorney’s fees in the *437 amount of $2,500.00 in spite of the fact that the insurer, Commercial Union Insurance Companies, (hereinafter referred to as “Commercial”) deposited into the Court Registry $2,500.00 as an unconditional tender to the claimant. The plaintiff perfected a devolutive appeal wherein the following errors were alleged: (1) Failure of the trial court to award benefits in the amount of $139.86 per week for a total and permanent disability; and (2) In the alternative, failure of the trial court to award compensation for permanent partial disability. The defendant perfected a suspensive appeal alleging the following errors; (1) In finding the duration of the disability to be six months (25.8 weeks) and that the disability was total; (2) In awarding to the plaintiff benefits, penalties, interest and attorney’s fees in an amount exceeding defendants’ deposit into the Registry of the court.
The plaintiff was employed by the Elks Home Association and Lodge as a waitress/custodian at the Lodge. Her immediate supervisor was her son who, at the time was the manager of the Lodge responsible for other Lodge employees, including his mother. On September 9, 1982, while performing her work duties at the Lodge, the claimant sustained fractures in her big toe and second toe when a heavy sliding door to a refrigerator fell on her foot. On the day following the injury, the claimant was examined in the emergency room of the St. Francis Cabrini Hospital by Dr. C. Dono von Perdue, who is an orthopedic surgeon. Dr. Perdue diagnosed the injury and proceeded to monitor the claimant’s improvement until October 6, 1982, when he concluded that Mrs. Aymond’s foot was fully healed and ready to return to work. Whether the plaintiff ever actually attempted to return to work is subject to some dispute. In any event, the claimant subsequently saw Dr. Perdue again with complaints of pain and tenderness in her toes. Dr. Perdue continued to see Mrs. Aymond at regular intervals until January 24, 1983, when Dr. Per-due again recommended that Mrs. Aymond return to work.
The plaintiff never did return to work because, in the meantime, her son had been discharged as the manager of the Lodge. But on the basis of this latest recommendation by Dr. Perdue, Commercial discontinued the compensation benefits it was making at $61.00 per week beginning in September of 1982. Later in his deposition, Dr. Perdue expressed the opinion that Mrs. Aymond would have been able to return to work with only a very slight limitation in movement and without substantial pain.
In the meantime, Dr. Douglas Waldman, who also is an orthopedic surgeon, examined Mrs. Aymond’s injured toes at her attorney’s request on December 2, 1982. Although Dr. Waldman assigned a slight disability as a result of the fractures, he was of the opinion in his deposition that Mrs. Aymond would have been able to return to work, without any appreciable difficulty, six months after the initial injury. Dr. Waldman conveyed this opinion to Commercial in a letter dated January 3, 1983.
At the trial, Mrs. Aymond testified that because of pain and tenderness in her toes, she was unable to work or to stand for any length of time. In effect, Mrs. Aymond testified that her injured toes prevented her from engaging in any gainful employment. Also at the trial, there was conflicting and confusing testimony concerning the claimant’s hours, wages, and the date of her injury. Apparently, Mrs. Aymond’s hours varied from day to day with her day beginning usually at about 11:00 a.m. and ending at different times on different days. Also, no records were kept of her wage calculations, but only of lump payments, even though Mrs. Aymond’s son testified that his mother was paid $3.35 per hour up to August, when she was paid $3.50 per hour.
In its judgment, the trial court held that Mrs. Aymond did not suffer pain that was sufficiently substantial so as to render her totally and permanently disabled. Instead, the trial court held that the claimant was totally disabled for a duration of six months from the date of the accident. Accordingly, Mrs. Aymond was adjudged to *438 be entitled to disability benefits at a rate of 66.6% of her wages during the six month period. The trial court concluded that Mrs. Aymond’s hourly wage was $3.35 and that because she worked less than forty hours a week she was entitled to benefits on the basis of a forty-hour week pursuant to LSA-R.S. 23:1021(7). Accordingly, the trial court held that the plaintiff was due payments totaling $2,304.46 ($3.35 per hour at forty hours per week = $134.00 X 66-⅜ % = $89.32 x 25.8 weeks + $2,304.46). We have discovered that the trial court’s arithmetic is slightly incorrect and we find that the proper compensation amount totals the sum of $2,302.50. In addition, the trial court assessed a penalty of 12% and attorney’s fees of $2,500 against Commercial for their arbitrary and capricious discontinuance of the compensation payments.
The claimant contends that the trial court erred in failing to award benefits in the amount of $139.86. This contention is without merit. The trial court’s conclusion about Mrs. Aymond’s average salary and the consequent calculations which result in the amount of $89.24 is a determination of a factual issue. Conflicting testimony was heard at the trial about the claimant’s wages and her average work day. After hearing this testimony, the trial court reached its factual conclusion on the basis of this evidence. This factual conclusion should not be disturbed on this appeal absent a clear error on the part of the trial court in reaching this conclusion. Canter v. Koehring, 283 So.2d 716 (La.1973). Our review of the record does not disclose a clear error by the trial court in its conclusion about the claimant’s average weekly salary.
Both the plaintiff and the defendant contend that the trial court erred in its conclusion concerning the character and the duration of Mrs. Aymond’s disability. The plaintiff argues that the trial court was manifestly in error when it did not give greater weight to her testimony concerning the pain she suffered when she tried to work. This error, argues the claimant, resulted in the trial court’s incorrect conclusion that there was a total disability for six months rather than of permanent duration. In the alternative, the plaintiff contends she at least suffers from a permanent partial disability. The defendant, on the other hand, argues that the duration of the disability was less than six months, nor was it a total disability.
The factual determination by the trial court as to the extent and duration of a disability should not be reversed unless it is clearly wrong. Watson v. Louisiana Paving Co., 441 So.2d 31 (La.App. 3rd Cir. 1983). Furthermore, whether a plaintiff’s pain is substantial enough to render him disabled is a question of fact to be determined by the trier of fact; such a determination will not be disturbed on appeal when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for such findings, unless such findings are clearly wrong. Sepulvado v. Willamette Industries, 459 So.2d 1342 (La. App. 3rd Cir.1984); Smith v. Union Underwear, Inc., 457 So.2d 248 (La.App. 3rd Cir.1984).
Mrs. Aymond testified that she was unable to walk or stand for any appreciable period of time due to stiffness and pain in her two injured toes. Dr. Perdue and Dr. Waldman, however, both testified that Mrs. Aymond’s painful condition is not permanent and that she should be able to return to work. Dr. Perdue opined that the claimant could have returned to work by January 24, 1983, while Dr. Waldman testified that the duration of the disability terminated six months after the injury occurred. In its written reasons for judgment, the trial court stated that it was basing its decision on the medical testimony, and particularly Dr. Waldman’s testimony, regarding the duration of the disability. The trial court stated specifically that the pain suffered by Mrs. Aymond was not severe enough to warrant a finding of a permanent disability. In light of the inconsistencies in Mrs. Aymond’s testimony, we cannot say that the trial court was clearly wrong in finding Mrs. Aymond’s testimony about her own *439 pain to be inconclusive. Instead, the trial court relied on the medical testimony in order to conclude that the disability was total and six months in duration. From our review of the record, we conclude that the trial court was not clearly wrong in its factual findings.
In the defendants’ final assignment of error they contend that the trial court erred in awarding compensation benefits, statutory penalties and attorney’s fees in excess of the $2,500 deposited by the defendant in the Registry of the Court as an unconditional tender.
LSA-R.S. 22:658 provides for 12% penalty and attorney’s fees to be assessed against insurance companies that withhold or discontinue payments in an arbitrary or capricious manner. The trial court held that Commercial Union was arbitrary and capricious when it discontinued Mrs. Ay-mond’s payments on February 4, 1983 because this decision was contrary to the stated medical opinion of Dr. Waldman. Accordingly, the trial court awarded Mrs. Aymond a 12% statutory penalty and attorney’s fee in the amount of $2,500 along with the award of $2,304.46 (should have been $2,302.50) in accrued compensation benefits for the total and temporary disability. LSA-R.S. 22:658 however, provides that an insurer can deposit an undisputed portion of a claim in order to avoid the imposition of a penalty and attorney’s fees. Prior to the trial, Commercial Union deposited $2,500 into the Registry of the Court as an unconditional tender in order to avoid the imposition of penalties and attorney’s fees. The trial court held that this amount was insufficient to prevent the assessment of a penalty and attorney’s fees. The defendant contends that this decision by the trial court was erroneous and that the amount of the judgment should be limited to the amount deposited into the Court Registry.
This argument is without merit. LSA-R.S. 22:658 contemplates the avoidance of penalties and attorney’s fees through the unconditional tender of an undisputed portion. Thus, the refusal to pay the disputed portion cannot be considered arbitrary and capricious. In the case at bar, the arbitrary decision to discontinue benefit payments had been made prior to the tender. This finding was not disputed by the defendants on this appeal. The unconditional tender could not cure the fact that an arbitrary discontinuance had occurred. Accordingly, the award of penalties and attorney’s fees was justified notwithstanding the defendants’ unconditional tender.
The other aspect of the defendants’ contention involves legal interest and court costs. A defendant can avoid legal interest and court costs if it deposits into the Registry of the Court an amount in excess of what is ultimately decided to be due as an unconditional tender. Holmes v. Motors Insurance Corporation, 277 So.2d 472 (La.App. 4th Cir.1973). In this case, the amount ultimately awarded ($2,302.50 in benefits + 12% interest + $2,500 in attorney’s fees) exceeded the $2,500 deposited by the defendants as an unconditional tender. Therefore, the defendants are not relieved of the obligation to pay legal interest and court costs.
Finally, the plaintiff, in brief, prays for an increase of the award for attorney’s fees in order to cover the costs of preparing this appeal. Such an adjustment is not warranted in this case.
For the foregoing reasons, the judgment of the trial court is affirmed at the defendant-appellant’s cost.
AFFIRMED AND AMENDED.